Rachel M.B. Remes, Bar No. 016117
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-7750
Facsimile: (602) 542-7644
Rachel.Remes@azag.gov
Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Lavell H. Jones,

Plaintiff,

vs.

State of Arizona, Arizona Board of Regents, a political subdivision of the State of Arizona, Northern Arizona University, a public university,

Defendants.

Case No: CV19-08210-DJH

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants State of Arizona, the Arizona Board of Regents, and Northern Arizona University (collectively, the "Defendants"), move the Court for summary judgment on all of Plaintiff's claims pursuant to Fed. R. Civ. P. 56. There is no genuine issue of material fact for trial, and Defendants are entitled to judgment as a matter of law. This Motion is supported by the Memorandum of Points and Authorities below, and the Court's record.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION.

Lavell Jones ("Jones") began his employment as a shuttle driver at Northern Arizona University ("NAU") in August 2012. [Defendants' Statement of Facts ("DSOF") ¶ 1; Ex. 1, Lavell Jones Dep. Tr. ("Jones Dep.") 20:25–21:4.] His primary job

function was transporting students, faculty, and the public around campus, in a safe and courteous manner. [DSOF ¶ 2; Ex. 1, Jones Dep. 21:5-10, 22:7-25.] On May 1 2018, NAU terminated Jones's employment "for repeated incidents of unprofessional communication and interactions in the position of Driver, Bus/Tram at Shuttle Services." [DSOF ¶ 3; Ex. 1, Jones Dep. 142:13–143:11; Ex. 2, Termination Memorandum signed by Judy Manor ("Term. Memo.") at 1, ¶ 1.]

Jones identifies as a Black male. [DSOF ¶ 4; Compl. (Dkt. 1) at ¶¶ 11, 26.] For his disparate treatment claim under 42 U.S.C. § 2000e–2(a), he alleges that NAU wrongfully terminated his employment [*id.* ¶ 30]; denied him promotional opportunities (*id*. ¶¶ 17, 34-35); imposed excessive disciplinary action (*id*. ¶ 17); and treated similarly-situated non-Black employees more favorably (*id*. ¶¶ 27, 29). He alleges that these same actions constitute unlawful retaliation under 42 U.S.C. § 2000e–3(a) for filing a discrimination complaint two years earlier (*id*. ¶¶ 23-24, 38-42).

Summary judgment tests whether there is sufficient evidence for a plaintiff to prove his case at trial. A motion for summary judgment must be granted when the admissible evidence is viewed in a light most favorable to the nonmoving party and shows that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) (trial courts only consider admissible evidence on summary judgment). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Materiality rests on the relevant substantive law, and only those factual disputes that might affect the outcome of the suit can preclude summary judgment. *Id.* There is no issue for trial when the evidence is insufficient to prove the nonmoving party's case. *Id*. at 249.

The admissible evidence here is insufficient to prove Jones's case, and Defendants are entitled to judgment as a matter of law. Thus, this Court should grant summary judgment in their favor on all claims.

## II. ABOR IS THE PROPER DEFENDANT.

Jones named three Defendants in this action – the State of Arizona; the Arizona Board of Regents ("ABOR"); and Northern Arizona University ("NAU"). Jones worked at NAU, but NAU is a non-jural entity and it does not have the power to sue and be sued. Thus, it is not a proper Defendant. ABOR is the governing board for NAU, and it does have the power to sue and be sued. Ariz. Const. art. 11, § 5; Ariz. Rev. Stat. § 15-1625. ABOR is also an arm of the State of Arizona. *Rutledge v. Ariz. Bd. of Regents*, 660 F.2d 1345, 1349 (9th Cir. 1981), aff'd sub nom. *Kush v. Rutledge*, 460 U.S. 719 (1983); overruled on other grounds, *Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir. 1989). As such, it is unnecessary to name both the State of Arizona and the ABOR as separate Defendants. Although ABOR is the proper Defendant-employer in this case, for ease of reference, Defendants will also be referenced as NAU in this Motion.

## III. JONES FAILS TO ESTABLISH DISPARATE TREATMENT.

Title VII prohibits race discrimination in the terms, conditions, benefits, and privileges of employment. 42 U.S.C. § 2000e-2(a). Disparate treatment in employment means that a person is singled out and treated less favorably than other similarly-situated employees because of race. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). To establish such a claim, a plaintiff must first establish a prima facie case either by direct or circumstantial evidence of discriminatory intent, or through the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). *See Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).

To establish a prima facie case of disparate treatment under *McDonnell Douglas*, a plaintiff must show that 1) he is a member of a protected class; (2) he performed according to his employer's legitimate expectations; (3) he experienced an adverse employment action; and (4) similarly-situated employees outside his protected class received more favorable treatment. *Cornwell*, 439 F.3d at 1028 (citing *McDonnell Douglas*, 411 U.S. at 802). Jones cannot establish the elements of the prima facie case, and his claim fails as a matter of law.

**A. Jones Fails to Establish a Prima Facie Case.**

Jones fails to establish a prima facie case of race discrimination because he presents no evidence of discriminatory intent, and he cannot establish the prima facie elements set forth in *McDonnell Douglas*. Specifically, Jones cannot show that he was performing his job duties according to NAU's expectations (second element), and there are no similarly-situated individuals who received more favorable treatment than Jones (fourth element).

**B. NAU Received Repeated Complaints About Jones's Behavior.**

Shuttle Services received repeated complaints about Jones's unprofessional and disrespectful behavior. [DSOF ¶ 5; Ex. 2, Term. Memo. at 1, ¶ 1.] NAU addressed the complaints with Jones and reiterated job expectations. [DSOF ¶ 6; *id.* at 3, ¶11.] The record of complaints and NAU's efforts to get Jones to correct his behavior demonstrate that his job performance fell below legitimate expectations and standards.

**C. Jones Received Three Written Warnings.**

Jones received his first written warning for being disrespectful to other bus drivers in December 2013. [DSOF ¶ 7; Ex. 1, Jones Dep. 148:2-6; Ex. 2, Term. Memo. at 1, ¶ 2; Ex. 3, Dec. 5, 2013 Memo., ¶ 3.] The second written warning in September 2014 documented complaints that Jones drove away from a bus stop without allowing students to board, and he hit a student and then honked at the student several times. [DSOF ¶ 8; Ex. 1, Jones Dep. 70:21–71:4 (discussed complaints); 150:12–151:16 (received written warning); Ex. 2, Term. Memo. at 1, ¶ 4; Ex. 4, Sept. 29, 2014 Memo. (written warning) at 1, ¶ 3.]

In January 2016, Jones received a third written warning for his "pattern of unprofessional communication and interaction with other staff workers" and another employee's complaint that Jones behaved in an "attacking and unprofessional" manner. [DSOF ¶ 9; Ex. 5, Jan. 21, 2016 Memo. at 1, ¶ 4.] Jones was informed that if his performance regarding his interactions with others did not show immediate and sustained improvement, disciplinary action, including termination, may be necessary. [*Id*. at 1, ¶

6.] A written warning is not considered formal disciplinary action, but it is used as part of NAU's progressive discipline practice to address a failure to meet job requirements, violations of rules and policies, or when performance feedback has not produced satisfactory results. [DSOF ¶ 10; Ex. 6, Decl. of Marcia Warden ("Warden Decl.") ¶ 3.]

**D. Jones's Behavior Necessitated Three Performance Discussions.**

On August 25, 2014, Jones was counseled after a co-worker complained that Jones had "chest bumped" him and acted in a threatening and intimidating manner. [DSOF ¶ 11; Ex. 1, Jones Dep. 70:21-25, 71:9-12; Ex. 2, Term. Memo. at 1, ¶ 3; Ex. 7, Sept. 25, 2014 Email, ¶¶ 2, 4.] Jones was instructed to "communicate professionally" with others. [*Id*.] On February 16, 2015, NAU addressed a student's complaint that Jones had made inappropriate comments, which made her uncomfortable. [DSOF ¶ 12; Ex. 1, Jones Dep. 70:21-25, 71:13-15; Ex. 2, Term. Memo. at 1, ¶ 5.]

In January 2016, Erin Stam (Director of NAU's Transit Services) met with Jones to address his pattern of unprofessional behavior. [DSOF ¶ 13; Ex. 5, Jan. 21, 2016 Memo. at 1, ¶ 1 (referencing meeting).] Ms. Stam expressed concern about the series of complaints that Shuttle Services had received about Jones's behavior being "aggressive, not professional, kind of attacking." [DSOF ¶ 14; Ex. 8, Certified Transcript of Jan. 20, 2016 Meeting ("2016 Mtg. Tr.") 5:2-15, 9:17-23.] The complaints came from different people and at different times, over years. [DSOF ¶ 15; Ex. 1, Jones Dep. 98:25–99:7; Ex. 8, 2016 Mtg. Tr. 8:18-20.] The situations and people involved were not connected, but they all related to Jones's behavior. [DSOF ¶ 16; Ex. 8, 2016 Mtg. Tr. 12:2-4, 10-13.]

Jones acknowledged that there was pattern of complaints relating to his interactions with others. [DSOF ¶ 17; *Id.* 8:19–9:6.] He understood that NAU expected him to be courteous and professional, to use good judgment, and to provide good customer service. [DSOF ¶ 18; Ex. 1, Jones Dep. 152:25–153:10.] A performance feedback discussion is not formal disciplinary action, but it is part of NAU's progressive discipline practice, and it is used to assist an employee improve work performance or comply with policies and procedures. [DSOF ¶ 19; Ex. 6, Warden Decl. ¶ 4.]

**E. Jones Received Two "Needs Improvement" Ratings.**

In May 2015, Jones received a "Needs Improvement" rating based on his work behavior and relationships with co-workers. [DSOF ¶ 20; Ex. 1, Jones Dep. 156:19–157:23; Ex. 9, 2015 Perf. Appr. at 3.] He received a similar "Needs Improvement" rating in 2016. [DSOF ¶ 21; Ex. 1, Jones Dep. 169:1-25; Ex. 10, 2016 Perf. Appr. at 3.]

After Jones received his 2016 Performance Appraisal and until early 2018, Shuttle Services did not receive complaints about Jones's behavior. [DSOF ¶ 22; Ex. 2, Term. Memo. 2-3.] In February 2018, three drivers in Shuttle Services complained to their supervisor that Jones had acted inappropriately during a work charter. [DSOF ¶ 23; Ex. 11, Apr. 4, 2018 Letter.][1] On March 15, 2018, Jones had an interaction with a student passenger that escalated. [DSOF ¶ 24; Ex. 2, Term. Memo. at 3, ¶ 2.] NAU reviewed video of the incident and the statements of those involved, and concluded that Jones appropriately instructed a student to keep his feet and legs out of the aisle as others passed, and that the student tried to comply, but his height made that difficult. [DSOF ¶ 25; *Id.* at 3, ¶¶ 2-3.] After that, Jones made statements to the entire bus, including, "This is not high school … don't get embarrassed to get kicked off a college bus." [DSOF ¶ 26; *Id.*, ¶¶ 4-6.] NAU concluded that Jones continued to argue with the student and escalate the situation, and then called the NAU Police Department to have the student removed from the bus. [DSOF ¶ 27; *Id.*, ¶ 6.]

The student complained about Jones's behavior to Shuttle Services. [DSOF ¶ 28; Ex. 12, Decl. of Judy Manor, ¶ 8.] NAU determined that Jones's statements were "unnecessary, unprofessional, and served only to escalate the situation rather than diffuse it or resolve it – directly opposite [of] what is expected in difficult customer service situations." [DSOF ¶ 29; Ex. 2, Term. Memo. at 3, ¶ 7.]

---

[1] The student driver's name has been redacted from this educational record pursuant to the privacy protections of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.

The Termination Memo documents numerous instances when Jones failed to comply with policy and the expectation that all drivers must communicate with others in a respectful and appropriate manner. [DSOF ¶ 30; *Id.* at 1-3.] Title VII does not protect an employee when he violates his employer's rules and orders, disrupts the work environment. *UNT v. Aerospace Corp*., 765 F.2d 1440, 1446 (9th Cir. 1985). Jones's failure to perform his job duties consistently with NAU's legitimate expectations is well documented for which Title VII provides him no cause of action or remedy.

**F. Jones's Excessive Discipline Claim is Time Barred.**

Jones asserts that NAU subjected him to excessive disciplinary action [DSOF ¶ 4; Compl. (Dkt. 1) ¶ 17).] The only formal discipline that Jones received was his termination in 2018. [DSOF ¶ 31; Ex. 6, Warden Decl. ¶ 6.] To the extent that Jones based his claim on NAU's efforts to address his performance deficiencies through the written warnings, and the performance discussions and appraisals outlined in the Termination Memo, those claims are time barred.

As outlined above, Jones received written warnings in 2013, 2014, and 2016; the performance discussions occurred in 2014, 2015, and 2016; and he received "Needs Improvement" ratings in 2015 and 2016. In order to pursue a Title VII in Arizona, a plaintiff must first file an EEOC Charge within 300 days of the alleged discrimination. *See Barnett v. Bashas, Inc.*, 2005 WL 8161236, *3, n.2 (D. Ariz. Sept. 30, 2005) (citing *Schell v. Harris/Shcolnik & Assocs*., 1998 WL 960327 *1 (D. Ariz. Nov. 6, 1998)).

On March 14, 2016, Jones filed an EEOC Charge alleging that his supervisor, Nicki, overly scrutinized his work performance and subjected him to false accusations. [DSOF ¶ 32; Ex. 1, Jones Dep. 165:22–166:10; Ex. 13, 2016 Charge.] Although the Charge did not specifically mention the actions that NAU took from 2013-2016 to address Jones's work performance deficiencies, it does mention the supervisor, Nicki, and it alleges disparate treatment based on race. [*Id.*]

The EEOC dismissed the 2016 Charge on February 28, 2017. [DSOF ¶ 33; Ex. 14, EEOC Dismissal.] Jones had 90 days from receipt of the EEOC's Dismissal to file

suit, and any claims filed after that are time barred. *See Payan v. Aramark Mgmt. Servs.*, 495 F.3d 1119, 1121 (9th Cir. 2007) (Title VII claim that is not filed within 90 day from receipt of EEOC's dismissal is time-barred.) Jones filed this action more than three years after the EEOC's dismissal. Thus, any claims that Jones bases on NAU's warnings, discussions and appraisals from 2013-2016, are time barred.

**G. No Similarly-Situated Employees Exist.**

Jones fails to identify any similarly-situated employees outside his protected class who received more favorable treatment. *See Hawn v. Exec. Jet Mgmt. Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (discussing fourth element of prima facie case). Similarly-situated means "similar in all material respects" and they must have similar jobs and display similar conduct." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (citations omitted).

**1. No other drivers had a similar record of complaints.**

Jones fails to identify any other Shuttle Services driver who had a similar record of complaints. With that evidence, Jones fails to establish an essential element of the prima facie case, and his disparate treatment claim fails. *See Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). In that case the plaintiff could not identify any similarly-situated employees who had a similar record of misconduct. *Id*. The Ninth Circuit affirmed summary judgment for the defendant because Leong failed to establish a prima facie case. *Id*. This Court should reach the same result.

**2. No similarly-situated drivers were promoted over Jones.**

Jones claims that NAU unlawfully denied him an opportunity to promote from driver to lead driver. [DSOF ¶ 34; Ex. 1, Jones Dep. 176:22–177:1.] The lead driver job has supervisory responsibilities and a higher pay scale than a driver, so it would be considered a promotion. [DSOF ¶ 35; Ex. 12, Decl. of Judy Manor ("Manor Decl.") ¶ 6.]

Jones applied for a lead driver vacancy twice. [DSOF ¶ 36; Ex. 1, Jones Dep. 174:25 – 175:6.] In 2013, he applied and was interviewed, but he was not offered the job because he scored 147 and the successful candidate scored 165. [DSOF ¶ 37; Ex. 1,

Jones Dep. 175:7-19; Ex. 6, Warden Decl. ¶ 9; Ex. 15, Hiring Memo, ¶ 2.] He applied again in 2018, but he withdrew his application after he was invited to interview because he no longer wanted that job. [DSOF ¶ 38; Ex. 1, Jones Dep. 175:20–176:17, 180:25–181:9.] Jones fails to produce any evidence challenging the hiring decision for the lead driver position he applied for in 2013, and by withdrawing his application in 2018, his claim for that promotion is moot.

Shuttle Services followed NAU's established competitive hiring process to fill job vacancies. [DSOF ¶ 39; Ex. 6, Warden Decl. ¶ 7; Ex. 12, Manor Decl. ¶ 3.] Applicants had to submit an application by a set deadline; the applications were scored; interviews took place and were scored; and typically, the job was offered to the successful candidate with the highest combined score. [*Id*.]

Jones alleges that he was required to apply for lead driver job through NAU's established process, but Shuttle Services promoted other drivers Scott Trillo; Robert ("Bob") Perry; Brent Benson; Carl Turner; Virginia ("Ginger") Haviland; Jesse Morgan; Nickoletee ("Nicki") Keesee; Rodney ("Rod") Bartlett; Buddy McDonald, and William ("Bill") Dunphy to lead driver, without making them follow the established hiring process. [DSOF ¶ 40; Ex. 1, Jones Dep. 177:10-178:1; Ex. 16, Pl.'s Resp. to Interrog. #6.] He provides no support for his allegation.

According to NAU's records, Jesse Morgan applied for, and was promoted to a senior driver position, and all of the other employees on Jones's list were promoted to lead driver after applying and competing for the job through NAU's established competitive hiring process. [DSOF ¶ 41; Ex. 6, Warden Decl. ¶ 9; Ex. 12, Manor Decl. ¶ 7.] Jones produced no evidence to demonstrate otherwise.

Jones's claim rests on a conclusory allegation, which fails to establish a genuine issue of material fact precluding summary judgment. *See Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1079 (9th Cir. 2003) (plaintiff's unsupported, conclusory allegations are insufficient to defeat summary judgment.) Jones is not similarly-situated to any of the individuals who were promoted through the established hiring process.

**3. Former employees allowed to visit are not similarly-situated.**

Jones claims that NAU precluded him from visiting Shuttle Services after his termination, but it allowed a former employee and former student driver to return to the office even after being terminated, and eventually rehired them. [DSOF ¶ 42; Ex. 17, Pl.'s Resp. to Interrog. #10.] The former Shuttle Services Driver left NAU when he accepted a job at Fed Ex. [DSOF ¶ 43; Ex. 12, Manor Decl. ¶ 10.] He was terminated in March 2014 because he cursed at a supervisor, but he has been allowed to enter Shuttle Services as a Fed Ex employee making deliveries. [DSOF ¶ 44; *Id*.] The student driver was terminated for driving the shuttle bus around instead of doing his job, and when he asked for a second chance, Shuttle Services allowed him to return as a student driver. [DSOF ¶ 45; Ex. 12, Manor Decl. ¶ 11.] He graduated from NAU and later returned to work for Shuttle Services as a part-time temporary employee. [DSOF ¶ 46; *Id*.]

After his termination, NAU restricted Jones from visiting Shuttle Services because Jones made statements relating to his termination that raised concerns about the safety of Shuttle Services' employees. [DSOF ¶ 47; *Id*., ¶ 9; Ex. 20, Aug. 8, 2018 Email.] On April 11, 2018, Jones sent a letter to NAU stating, "the racist person(s) pounced at the opportunity to Slay L.J. … Well[,] job well done! But your sins will not go unnoticed!!! God or someone in this company will notice your hatred and bulling of Black employees and you will be brought to Justice!!! [DSOF ¶ 48; Ex. 18, Apr. 11, 2018 Letter.] On May 29, 2018, Jones submitted a grievance in which cited biblical passages referencing a "wicked man" who "accepts a bribe in secret to pervert the course of justice" and "whoever slanders his neighbor" will be "silenced." [DSOF ¶ 49; Ex. 19, Grievance at 2.] Jones fails to point to any evidence that the other driver or student driver made statements that raised concerns about the safety of other employees. No reasonable jury could find that they are similarly-situated to Jones.

**4. Jones is not similarly-situated to higher-paid drivers.**

Jones claims that Shuttle Services paid drivers Ben Begay and Dan Zimmer significantly more than him even though they started working in Shuttle Services at the

same time. [DSOF ¶ 50; Ex. 17, Pl.'s Resp. to Interrog. #10.] According to NAU's payroll records, Lavell Jones, Ben Begay, and Dan Zimmer started working in Shuttle Services at the same time. [DSOF ¶ 51; Ex. 6, Warden Decl. ¶ 8.] Mr. Begay and Mr. Zimmer received merit pay increases in 2013, 2014, and 2016. Mr. Jones did not receive a merit increase in 2013 because he had not been employed at NAU long enough to be eligible for that increase. [DSOF ¶ 52; *Id*.] Jones received a merit pay increase in 2014, but he did not receive one in 2016 because his "Needs Improvement" Performance Appraisal rating made him ineligible for that increase. [DSOF ¶ 53; *Id*.] Jones fails to produce any evidence to show that Mr. Begay and Mr. Zimmer received pay increases for which they were ineligible. These individuals are not similarly-situated to Jones.

**H. When There is No Prima Facie Case Summary Judgment is Required.**

Because Jones fails to put forth sufficient evidence to establish a genuine issue of fact on the second and fourth elements of the prima facie case, summary judgment is required. *See Cal. Architectural Bldg. Prods. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex v. Catrett*, 477 U.S. 317 322-23 (1986)). Even assuming that Jones could establish a prima facie case, his disparate treatment claim fails for the additional reason that he is unable to establish pretext, which is part of his burden under the second part of the McD*onnell Douglas* burden-shifting framework.

**I. NAU's Actions Are Legitimate and Nondiscriminatory.**

Assuming that Jones could establish a prima facie case, the burden of production shifts to NAU to articulate legitimate, nondiscriminatory reasons for its actions. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). NAU has met its burden.

When an employer takes action in response to an employee's failure to comply with the employer's directives, the employer has met its burden under *McDonnell Douglas*. *See Cornwell*, 439 F.3d at 1034. In that case, the Ninth Circuit affirmed summary judgment for the employer and finding that the defendant met its burden by showing that it fired the plaintiff for failing to timely comply with requests from the highest level of management.) The Ninth Circuit reached a similar result in *Bodett v.*

*Coxcom*, 366 F.3d 736, 744 (9th Cir. 2004). In that case the court found that employer met its burden by establishing that plaintiff employee was terminated for violating workplace policy. The plaintiff was on notice that violations of policy could result in termination. *Id*. Much like the plaintiff in *Bodett*, Jones was on notice that his behavior was a problem and that he had to take corrective action to avoid possible termination.

For example, in 2014, Jones received a written warning stating that, if he did not show immediate and sustained improvement in his communications with others, disciplinary action, including termination, would be considered. [DSOF ¶ 54; Ex. 4, Sept. 29, 2014 Memo at 2, ¶¶ 3-4.] In January 2016, Erin Stam told Jones, "we're not having this conversation because of [one] complaint. We're having it because of a pattern over years with the same concern." [DSOF ¶ 55; Ex. 8, 2016 Mtg. Tr. 41:19-24.]

On May 1, 2018, Ms. Stam reminded Jones of their previous communications: "The manner in which you communicate with people has caused problems – significant repeated problems. And we have met with you repeatedly to try to get you in a better place." [DSOF ¶ 56; Ex. 21, Tr. from May, 1, 2018 Mtg. ("2018 Mtg. Tr.") 22:23-25.]

NAU has met its burden of establishing legitimate, nondiscriminatory reasons for terminating Jones's employment. The same is true for Jones's other claims. Shuttle Services did not promote Jones, or anyone else, from driver to lead driver if they did not apply and compete for the job. In addition, NAU paid drivers merit increases for which they were eligible. Jones was not denied any increase for which he was eligible, and he fails to demonstrate otherwise. Last, Shuttle Services was concerned by some of Jones's own statements regarding his termination, so his access was restricted.

**J. Jones Fails to Establish Pretext.**

Because NAU has met its burden, in order to avoid summary judgment Jones must rebut NAU's reasons with specific and substantial evidence of pretext. *See Wallis*, 26 F.3d at 890. Pretext requires evidence that the employer's stated reason for the challenged action is unworthy of credence, internally inconsistent, or otherwise not believable. *Bodett*, 366 F.3d at 743.

Jones fails to meet his burden. He cannot point to any evidence that would cast doubt on NAU's nondiscriminatory reasons for any of the actions that Jones disputes. A plaintiff cannot avoid summary judgment merely by establishing a prima facie case. *Wallis* 26 F.3d at 890 (citing *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991)). But as Defendants point out above, Jones fails to do even that. Summary judgment is required when a plaintiff fails to put forth specific and substantial evidence challenging the credibility of the employer's motives. *Vasquez,* 349 F.3d at 642; *Collings v. Longview Fibre Co*., 63 F.3d 828, 834 (9th Cir. 1995) (summary judgment affirmed where plaintiff merely denied that he engaged in misconduct that resulted in his termination and there is no evidence of pretext.) This Court should apply the reasoning of this authority and grant summary judgment in NAU's favor.

**IV. JONES'S RETALIATION CLAIM FAILS.**

Title VII prohibits retaliation against an employee for opposing a discriminatory employment practice. 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* burden-shifting framework applies to Title VII retaliation claims. *Porter v. Cal. Dep't of Corr*., 419 F.3d 885, 894 (9th Cir. 2005). To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) protected conduct was a "but for" cause of the adverse employment action. *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013); *University of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362-63 (2013) ("but for" causation required). If a prima facie case exists, the employer must articulate legitimate, nonretaliatory reasons for its actions, which the plaintiff rebuts with evidence of pretext. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

Jones alleges that NAU retaliated against him "for filing a prior EEOC claim." [DSOF ¶ 57; Compl. (Dkt. 1) at 3, ¶ 16.] NAU admits that Jones engaged in protected activity when he filed his 2016 EEOC Charge. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (filing a charge or making a complaint alleging unlawful conduct under Title VII is protected activity). NAU also admits that an

involuntary termination is an adverse action. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (stating termination is an adverse employment action.) But the other actions that Jones disputes are not adverse actions, and Jones's prima facie case fails because he cannot establish but-for causation as to any of the disputed actions.

**A. Jones Cannot Establish a Prima Facie Case of Retaliation.**

Jones cannot establish that NAU's alleged failure to promote him and give him pay increases for which he was ineligible, are adverse actions within the meaning of Title VII. NAU was not going to promote Jones to a lead driver job for which he did not apply, whether he filed an EEOC Charge, or not. The same is true for the pay increases. He was never entitled to the increases that other drivers received, so NAU's alleged failure to provide them is not an adverse action. In addition, NAU's restriction on Jones's visits to Shuttle Services after his termination is not an adverse employment action. Thus, the only adverse action here was Jones's termination. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (discussing no adverse action is found when employee experienced no change in work terms, conditions, pay, or privileges) (citations omitted).

While Jones may have established some of the elements of the prima facie case regarding his termination, he fails to establish a prima facie case of retaliation because he has producing nothing to meet his burden of establishing the "but for" causation element. Jones knew that his interactions with others at work continued to be a problem that he needed to correct to avoid disciplinary action.

In 2014, Jones received a written warning putting him on notice that a failure to correct his behavior could result in disciplinary action, including termination. [DSOF ¶ 54; Ex. 4, Sept. 29, 2014 Memo at 2, ¶¶ 3-4.] In 2016, Erin Stam told Jones that he needed to address the pattern of behavior that had produced a repeated stream of similar complaints about Jones. [DSOF ¶ 58; Ex. 8, 2016 Mtg. Tr. 41:19-24.] In 2018, NAU terminated Jones's employment because of his "repeated incidents of unprofessional communication and interactions." [DSOF ¶ 3; Ex. 1, Jones Dep. 142:13–143:11; Ex. 2,

Termination Memorandum ("Term. Memo.") at 1, ¶ 1.] The complaints about Jones's behavior started before he filed a Charge in 2016, and they occurred again in 2018. Jones produced nothing to show that he would not have been terminated but-for his complaint two years earlier.

In addition, Jones fails to produce any evidence showing that he would have been promoted and that he would have received additional pay increases if he had not filed a Charge in 2016. Evidence of but-for causation does not exist in this case. His claims rest on unsupported allegations and pure speculation, which is insufficient to demonstrate a genuine issue of fact. *See Nelson v. Pima Cmty Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (mere speculation and allegations are insufficient to avoid summary judgment).

NAU established above that Jones's "excessive discipline" claim is time barred but it is important to note that the actions that NAU took from 2013-2016 to address complaints about Jones's behavior, predate his EEOC Charge. Actions that take place before protected activity cannot occur because of it. For that additional reason, Jones fails to establish a prima facie case.

**B. NAU's Actions Were Legitimate and Nonretaliatory.**

Because Jones fails to establish a prima facie case of retaliation, the Court should grant summary judgment to the Defendants. Even if he could establish a prima facie case, NAU has met its burden of establishing legitimate, nonretaliatory reasons for its actions. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981) (discussing burden-shifting framework for Title VII claims.)

NAU terminated Jones for a repeated pattern of rude, inappropriate behavior, even after he was instructed to conduct himself in a professional manner. A plaintiff's failure to follow workplace rules constitutes insubordination, which is a legitimate, non-discriminatory basis for termination of employment in this Circuit. *See Cornwell*, 493 F.3d at 1034 (affirming summary judgment for employer that terminated plaintiff for his refusal to cooperate with a request from superiors); *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 605 (9th Cir. 2004) (holding insubordination is grounds for dismissal);

*Payne v. Norwest Corp*., 185 F.3d 1068 (9th Cir. 1999) (same). Other circuit courts have held that rude speech directed at a supervisor or other employees and insubordination constitute appropriate grounds for termination. *See Barber v. C1 Truck Driver Training, et al*. 656 F.3d 782, 790 (8th Cir. 2011) (discussing rude behavior as appropriate grounds for termination); *Ray v. Safeway Stores, Inc*., 614 F.2d 729, 731 (10th Cir. 1980) (holding employee who refused to follow employer's lawful order was fired legitimately). Under this weight of authority, NAU met its burden.

**C. Jones Presents No Evidence of Pretext.**

Much like his failure to show pretext for his disparate treatment claim, Jones fails to put forth evidence of pretext supporting his unlawful retaliation claim. He must demonstrate weaknesses and implausibilities in NAU's reasons. *See Brooks*, 229 F.3d at 928; *Gray v. Masterfoods*, 304 Fed. App'x 611, 612 (9th Cir. 2008) (applying the same test for pretext in retaliation claim that was also applied in discrimination claims.) This he fails to do.

Jones admitted that there was a pattern of similar complaints about his behavior. [DSOF ¶ 17, *Id.* 8:19–9:6.] That admission makes it difficult for Jones to demonstrate pretext because NAU took action in response to those complaints. He cannot demonstrate that NAU had a different motive than to address the complaints with Jones.

In 2016, Jones had nothing but words of praise for Erin Stam and Judy Manor: "You're the coolest. She's a really good woman. I wanna say that now in case anything ever happens in the future. She has a really good heart. She's a real good person. You're very professional. You're awesome." [DSOF ¶ 59; Ex. 8, 2016 Mtg. Tr. 14:16-20.]

Jones now contends that Ms. Stam terminated him because he was the only Black driver. [DSOF ¶ 60; Ex. 1, Jones Dep. 88:22–89:12, 91:21-92:4.] Jones's "evidence" of race bias consists of his statement that Ms. Stam greeted Caucasian employees at work functions but not Jones, and when he waved at her she failed to wave back, although he could not say that Ms. Stam's conduct was intentional. [DSOF ¶ 61; Ex. 1, Jones Dep. 90:14 – 91:3.] He made no mention of his 2016 Charge. Jones's retaliation claim is

based on pure conjecture, rather than the specific and substantial evidence that is required to establish pretext. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). And a supervisor's failure to wave or greet an employee is not actionable. *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (Title VII does not establish "a general civility code for the American workplace."); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Despite all of the feedback that Jones received about his job performance deficiencies, his effort to get along with co-workers consisted of staying as far away from them, as possible. [DSOF ¶ 62; Ex. 1, Jones Dep. 161:10-23, 174:15-24.] Avoiding other drivers was not an acceptable or appropriate response. [DSOF ¶ 63; Ex. 8, 2016 Mtg. Tr. 13:16-21.] While Jones may disagree with the complaints, and NAU's responses to them, a plaintiff cannot simply argue that the employer's decision was wrong, mistaken, or unwise to avoid summary judgment to avoid summary judgment. *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc*., 642 F.3d 728, 746 (9th Cir. 2011).

Indeed, conclusory allegations with no concrete or relevant particulars are not enough to deny summary judgment. *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988). A party opposing summary judgment must identify with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

**V. CONCLUSION.**

For the foregoing reasons, Defendants request the Court to grant summary judgment in their favor on all claims.

RESPECTFULLY SUBMITTED this 25th day of September, 2020.

Arizona Attorney General's Office

s/ Rachel M.B. Remes
Rachel M.B. Remes
Assistant Attorney General
Attorneys for Defendants

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, which generates a Notice of Filing to the following CM/ECF registrant on this 25th day of September, 2020:

Kimberly A. Eckert
LAW OFFICES OF KIMBERLY A. ECKERT
5235 South Kyrene Road Suite 206
Tempe, Arizona 85283
Attorneys for Plaintiff

s/ Lynda Ficarra
#8987759