LAW OFFICES OF KIMBERLY A. ECKERT
5235 South Kyrene Road Suite 206
Tempe, Arizona  85283
 (480) 456-4497 Fax (866) 583-6073
Kimberly A. Eckert – 015040
keckert@arizlaw.biz
**Attorney for Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Lavell H. Jones,

             Plaintiff,

             v.

State of Arizona, Arizona Board of
Regents, a political subdivision of the
State of Arizona, Northern Arizona
University, a public university,

             Defendants.

CV-19-08210-PCT-DJH

**RESPONSE TO MOTION
FOR SUMMARY JUDGMENT**

Plaintiff Lavell Jones ("Jones") hereby submits his Response to Defendants' Motion for Summary Judgment and asks that it be denied. Material issues of fact are present here, precluding summary judgment. One of the most glaring examples of a factual issue in dispute is the reason given for Jones' termination. Jones' direct supervisor did not make any recommendation for termination or even discipline for the alleged incident; was not consulted with prior to any termination, and had not given Jones any write-ups or other

disciplinary action since the prior supervisor was removed.[1] Instead, that supervisor's supervisor, Erin Stam, who had targeted Jones, continued her subtle racial discrimination. Jones has available and asks that this Court allow him to submit the recording made of the termination hearing, as opposed to only reading the transcript, and view and hear the actual interaction claimed to be the reason for the termination. Due to the nature of the media, these are available if the Court would view them. What is apparent in the audio of the termination hearing is the condescending way Stam speaks to Jones, a Black man, showing how this is a case of disciplining a person for not acting the way she feels he should. The video of the incident that is the basis for the termination shows Jones did nothing to warrant termination and the facts should be presented to a jury instead of summarily dismissed as Defendants want.

As a result, no legal basis exists for the Motion to be granted. As clarified by this Court, this Response is supported by the facts set forth herein.

## MEMORANDUM OF FACTS AND LAW

In response to the "facts" as set forth by the Defendants, Plaintiff Jones states the following. Lavell Jones ("Plaintiff") agrees that he began his employment as a shuttle driver at Northern Arizona University ("NAU") in

---

[1] Any attempt to reference the supervisor's opinion years after the fact and after consultation with attorneys' and others should disregarded.

August 2012. [Defendants' Statement of Facts ("DSOF") ¶ 1.  He agrees that his primary job function was transporting students, faculty, and the public around campus, in a safe and courteous manner. DSOF ¶ 2.  He agrees that on May 1 2018, NAU claims it terminated Plaintiff's employment "for repeated incidents of unprofessional communication and interactions in the position of Driver, Bus/Tram at Shuttle Services," DSOF ¶ 3, however, Plaintiff does not agree that was the reason. Plaintiff agrees he "identifies" as a Black male. DSOF ¶ 4

Supporting his disparate treatment claim under 42 U.S.C. § 2000e–2(a), he agrees he alleged in part that NAU wrongfully terminated his employment; denied him promotional opportunities; imposed excessive disciplinary action and treated similarly situated non-Black employees more favorably. He agrees that he alleged that these same actions constitute unlawful retaliation under 42 U.S.C. § 2000e–3(a) for filing a discrimination complaint two years earlier.

He further states the following facts: Jones is a Black male who was employed by Defendants at Northern Arizona University ("NAU"). Exhibit A, Affidavit of Lavell Jones. On or about March 14, 2018, an incident occurred involving an unruly and argumentative student rider on Plaintiff's shuttle bus. The matter was video/audiotaped. Although Plaintiff followed the policies and procedures, he was told he did not handle the situation properly. Exhibit A.

On or about April 6, 2018, Plaintiff was placed on administrative leave

and terminated on May 1, 2018. DSOF ¶ 3. The termination meeting was recorded and Erin Stam, who had lectured Plaintiff over the years about "the way" he spoke with people, initiated the termination. The meeting was audiotaped. Plaintiff disputes his termination and alleges that he was a good employee. He was rated Good in performance in mid-2017 under supervisor Brian Eekhoff. Exhibit B. In another undated evaluation, also under supervisor Brian Eekhoff, he was rated as "very good" overall and every category contained a "very good" or "exceptional" rating. Exhibit C. Plaintiff has received praise from riders evidenced by a letter from a passenger in 2017. Exhibit D. He had not received any formal discipline after his 2017 "very good" evaluation until his termination.

On December 20, 2018, Plaintiff filed his discrimination claim with the EEOC. Plaintiff stated that he was treated differently because of his race as well as was retaliated against for the filing of a prior EEOC claim. Deposition of Lavelle Jones, p.166 (Defendants' Exhibit 1).

Over the years of service at NAU, Plaintiff was denied promotional, professional opportunities, never given any leadership roles, and excessively disciplined. Exhibit A. Nikki Keesee, Robert Perry, Ginger Haviland, and Bill, all White employees, were promoted over Jones despite him having equal or more experience and some had bus accidents while Jones did not.. *Id.* Dan

Zimmer and John, both White, had less tenure and experience told Jones what they earned and it was more than Jones. *Id.*  Plaintiff is Black male and thus belongs to a protected class. Exhibit A. Non-Black employees were treated differently at NAU. *Id.* Plaintiff was "warned" by one of the only other Black employees, David Morrison, that they "didn't like their kind." *Id.* Morrison quit after getting passed over five times for a promotion. *Id.* Plaintiff qualified for the position and/or was performing the job satisfactorily as shown by statements of his supervisor and his recent evaluations. Exhibits B and C. Others similarly situated were not treated the same and White employees were given other opportunities including Louie, Bob, Carl, and others were invited to special meetings and Jones was not. *Id.* Even student drivers with no experience were put over him. *Id.* Dustin and Richard were fired but allowed back on campus-they are White, Jones was not allowed back on campus after termination. *Id.*

Jones was considered by his direct supervisor as a good driver as follows:

Q. Can you describe LJ's performance during the time that you were a supervisor? A. The first thing that comes to mind is that he's a very good driver and very personable talking with fellow employees, if I can use the term the gift for gab. He enjoyed talking. And that he was -- I believe I recall with him that he was very good at what we called pre-tripping the bus, which is checking the engine room, the aisleways, the seats, the outer part of the body. He would go through all of those pre-trip of the vehicle and was very good at that. I would observe all of the employees during the morning, and it could be dark at times. Sometimes it was early enough that it was dark out,  and sometimes it was light. And seeing him perform his pre-tripping -- and, again, as I mentioned

earlier, I would sometimes talk with him up where they would actually sign in just -- what I'm doing is evaluating that the drivers are in good condition to drive, that no one has any problems going on. And LJ -- he was on time, and he was a good driver. Yes. That's all that I can recall at the moment. Q. When you say he was a good driver, what goes into being a good driver? A. There's a lot for the training, but that --and I'm just going to have to itemize this as I remember -- but that he checks his mirrors accordingly as he's driving. He comes to a complete stop using his signals. He stays within the speed limit. He doesn't hit the curbs when he's pulling into a bus stop. So literally I'm talking of driving skills that they learn over time.

Exhibit D, Deposition of Robert Perry, p. 16.

"Q. Prior to LJ's termination, did you have any discussions with Erin Stam concerning LJ's performance? A. Not to my recollection. Q. Prior to LJ's termination, did you have any discussions with Erin Stam concerning LJ's performance? A. Not to my recollection." *Id.* at 19. "Q. Do you recall any passenger ever calling and complaining about LJ? A. I do not recall.. . . . Q. Did any co-worker ever complain about LJ? A. I do not recall." *Id.*

Erin Stam was a supervisor but not Plaintiff's direct supervisor. She lectured Plaintiff about his approach and way he spoke with people. Exhibit A. Her claims were directly contradicted by Plaintiff being repeatedly asked to transport alumni and even university management on events. Exhibit A. She even held up Jones' pay after he was fired. Exhibit A.

Erin Stam did not like Jones and he believes it was due to his skin color:

Q. Why do you think that Erin doesn't like you? A. She never spoke to me. We used to have cookouts. She would go socialize with the other

6

employees, never came my way or even near me, even if I was talking to someone of the white persuasion. When I used to drive the bus, I would try to wave, but she wouldn't wave back. A couple of times, I attributed that to maybe not seeing me, but you know, I drive the same bus all the time. I was always in her office no matter how petty the situation was."

Deposition of Lavell Jones, p. 90.

Q. Why do you think that she doesn't like you because of the color of your skin? A. I just told you. She wouldn't acknowledge me. Q. Why do you believe that that is attributed to the color of your skin? A. She would go with everyone else.

*Id.* p.91-92. Plaintiff also attributed some complaints by students racially based:

"Q. Did you understand that any of those individuals complaining had some improper motive against you? A. I don't know how to answer that question. Q. Do you think that any of the individuals who complained about you were motivated by your race? A. Yes. Q. Which ones? A. The Louie one, the Ashley one." *Id.* p. 99.

"Q. So, you believe that the individuals that you mentioned were promoted through a new process of submitting an application and interviewing or they were not required to do that. Is that correct?  A. Right. Q. Okay. And what do you base that on?  A. I was there when they told me, hey, they told me I'm going to be the new supervisor." *Id.* at 178.

Plaintiff regularly was asked to drive alumni and university management around. See Exhibit A; Exhibit E, p. 21: "Q. Okay. Do you recall him, for example, driving alumni to alumni events? A. That's correct. I do recall that."

Plaintiff's supervisor was not involved in the termination decision: "Q. Were you asked to give input into the termination? A. Not to my recollection.. Exhibit E, p. 26. Plaintiff filed two counts against Defendants for Racial Discrimination and Retaliation. See Complaint.

**Legal Analysis**

Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer" to "discriminate against any individual with respect to" the "terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e2(a). "Courts have long recognized that a workplace in which racial hostility is pervasive constitutes a form of discrimination." *Woods v. Graphic Communications*, 925 F.2d 1195, 1200 (9th Cir. 1991). In considering this Motion, "[t]he evidence of the nonmovant [Plaintiffs] is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (cites omitted); *b*, 873 F.3d 699, 704 (9th Cir. 2017).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*  Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 1056 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### State of Arizona and NAU

Defendants State of Arizona and NAU did not move to dismiss this case based on failure to state a claim or any other legal theory. They now insist that they are not proper parties. Even if ABOR is a jural entity, that does not prevent the State of Arizona or NAU from being sued as well.   However, if ABOR is accepting responsibility for this matter, then Plaintiff does not object as Plaintiff's claims are against NAU and whoever is ultimately responsible.

### Discrimination Claim

To establish a prima facie case, plaintiffs "must offer evidence that `give[s] rise to an inference of unlawful discrimination.'" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir.1998) (alteration in original), citing

9

*Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089 (1981).

A disparate treatment claim is supported by direct evidence of discrimination or may instead be evaluated under the burden-of-proof-and production analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). *See, e.g., Hawn v. Executive Jet Management, Inc.,* 615 F.3d 1151, 1155 (9th Cir. 2010) (applying *McDonnell Douglas* framework to Title VII discrimination claim). Jones may establish a prima facie case based on circumstantial evidence by showing he is a member of a protected class-here a Black male, that he was qualified for the positions and performing the job satisfactorily, that he experienced adverse employment actions as he was fired, and that "similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.,* 358 F.3d 599, 603 (9th Cir.2004); *see also Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994). Defendants specifically attack the second element (satisfactory performing his job duties) and the fourth element (similarly situated individuals outside his protected class were treated favorably).

**Element Two – Satisfactory Job Performance**

Plaintiff's supervisor Robert Perry stated Plaintiff did a good job. It is telling that Plaintiff's own supervisor was not consulted with prior to the

termination.  Further, this court should note that Defendant added affidavits to its motion and none of them were from Plaintiff's immediate supervisor at the time of his termination.  Erin Stam over the years and particularly since the 2016 EEOC complaint, treated Plaintiff differently due to his race and in retaliation for his EEOC complaint. Defendant only included Plaintiff's 2015 and 2016 performance evaluations in its motion (Def Exhibit 9, 10).  Plaintiff's 2016 performance evaluation states that he has Good Performance in his job functions and standards.  He received a Good rating in Goals. He received a Good rating for commitment to the mission of the university and work unit. It was noted that he was accident free for the appraisal period.

Plaintiff's 2017 performance evaluation, omitted by Defendants in their motion, is his most recent one and rates him as "very good" in performance and overall "good". Under each category of performance he received mostly ratings of "good" or "very good". The evaluation was under supervisor Brian Eekhoff. Comments include that he "has a positive attitude" and is "respective in his communications".  The evaluation contained notes from a ride-along, done by someone with the initials "BOB" indicating that he was "upbeat with the passengers". In another performance evaluation done by supervisor Brian Eekhoff, Plaintiff is rated as "very good" in every category.  This evaluation was also not included in Defendants' motion.

Defendant claims Jones received written warnings but one was in 2014, which Defendants point out is from years prior and is not relevant. Defendants' Exhibit 3 is from 2013. Defendants discuss Jones' 2016 EEOC charge and that Jones did not pursue further action at that time. Any employment action taken against Jones prior to 2016 should not be relevant. It was dealt with in the 2016 EEOC charge and was over with. Even if this court considers the old warnings, it is evident he improved based on his mid-2017 performance evaluation containing overall Good and has ratings of Very Good in several categories. Jones was not on a Performance Improvement Plan prior to his termination. He contends that any "performance discussion" held with Stam is indicative of her on-going discrimination. Jones has met Element Two of his prima facie case.

**Excessive Discipline claim is time-barred**

Highly ironic is that Defendants claim Jones cannot include older discipline yet they seek to use that to justify a termination. The evaluations they left out show no issues since 2016. Jones has no claim for old discipline but it is part of the ongoing bias against him and how from the EEOC claim and the change in supervisors, there were no issues until the termination by Stam.

**Element Four – Other Non-Black Employees were treated differently**

Jones was treated differently than non-Black employees. Erin Stam continuously lectured him on the way he spoke with and interacted with people

12

yet Jones' direct supervisor spoke positively about him and his job performance. *See Ellis v. Harrison*, 947 F.3d 555 (9th Cir. 2020), *citing to State v. Monday*, 171 Wash.2d 667, 257 P.3d 551, 557 (2011) ("Not all appeals to racial prejudice are blatant. Perhaps more effective but just as insidious are subtle references. Like wolves in sheep's clothing, a careful word here and there can trigger racial bias."). *See also  Soto-Feliciano v. Villa Cofresí Hotels, Inc.*, 779 F.3d 19, 25 (1st Cir. 2015) ("[W]here . . . the issue [is] whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be particularly cautious about granting the employer's motion for summary judgment." (internal quotation marks omitted) (*quoting Hodgens v. Gen. Dynamics Corp*., 144 F.3d 151, 167 (1st Cir. 1998)). Jones' affidavit specifically indicates how he was treated differently and states specific examples Exhibit A.

### NAU's Actions are not Legitimate and are Discriminatory

Title VII claims are evaluated through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination. *Noyes v. Kelly Servs.,* 488 F.3d 1163, 1168 (9th Cir.2007). When Plaintiff establishes a prima facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ.*

*of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123-24 (9th Cir.2000). If Defendants

meets this burden, Plaintiff must then raise a triable issue of material fact as to

whether the Defendants/ proffered reasons for termination is mere pretext for

unlawful discrimination. *Noyes,* 488 F.3d at 1168; *see also Coleman v. Quaker*

*Oats Co*., 232 F.3d 1271, 1282 (9th Cir.2000) (plaintiffs must "introduce

evidence sufficient to raise a genuine issue of material fact" as to pretext).

 To establish a prima facie case, plaintiffs "must offer evidence that

`give[s] rise to an inference of unlawful discrimination.'" *Godwin v. Hunt*

*Wesson, Inc*., 150 F.3d 1217, 1220 (9th Cir.1998) (alteration in original), *citing*

*Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67

L.Ed.2d 207 (1981). Jones has established a prima facie case based on

circumstantial evidence by showing that he is a member of a protected class-

here a Black male, that he was qualified for the positions and performing the job

satisfactorily, as set forth by his own supervisors and evaluations, that he

experienced adverse employment actions as he was fired, and that others

similarly situated outside his protected class were treated more favorably, as set

forth in his Affidavit, and/or other circumstances surrounding the adverse

employment action give rise to an inference of discrimination. Here, the

treatment of Jones was not the same as others who were given supervisory roles,

more money, were allowed at special meetings but Jones was not, and were not

baselessly lectured about their approach to people. When Jones reported being called racially based derogatory names, management did nothing. Exhibit A.

Here, the facts set forth a triable issue as to the firing being pretext for the discrimination. *See Earl v. Nielsen Media Research, Inc*., 658 F.3d 1108, 1112-13 (9th Cir. 2011) (noting that circumstantial evidence of pretext must be "`specific' and `substantial'" to create a triable issue.) The incident that was the reason for Plaintiff's termination was based on upper management's (not his immediate supervisor) assertions that the exchange between the passenger and Jones was "escalated" by Jones.  However, a question of facts exist precluding summary judgment. Jones contends that the video of the interaction does not include sound from passengers who were asking him if he was afraid, prompting him to make comments that Defendant claims are the reason for termination.

A careful review of the videotape supports his claims. Jones contends  he followed his employer's procedure by pulling the bus over and calling NAU police. In his deposition he stated that the passenger was yelling and screaming at him and that he felt threatened and he pulled over (Def Ex. 1, p. 20). He also noted that he would not have done anything differently today involving the interaction with the rider. *Id.* p. 88). In the termination memorandum issued to Jones on May 1, 2018, (Defendant's Exhibit 2), NAU outlines the reasons he is being terminated, including one incident from 5 years earlier, in 2013, two

incidents from 2014, one incident from 2015 and several from 2016. The EEOC

claim was made in 2016 and his supervisor was then changed. After that, Jones'

two most recent evaluations, as well as the deposition by his supervisor at the

time of the incident, showed no other reasons for the termination. Defendants'

far reaching, many years earlier "reasons" for termination is evidence of pretext.

The termination is not a legitimate firing. Stam spoke condescendingly to Jones

for years; she didn't like how behaved because he wasn't 'white enough.'

**Retaliation**

In order to establish a prima facie case for retaliation, Plaintiff must show,

among other requirements, that "he or she engaged in a `protected activity'" and

that "a causal link existed between the protected activity and the employer's

action." *Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1130 (Cal. 2005).  Under

both Title VII, 42 U.S.C.A. § 2000e-3(a), it is unlawful for an employer to

discriminate against an employee for opposing an unlawful employment practice

or has "made a charge, testified, assisted or participated in any manner in an

investigation,    proceeding    or    hearing"    concerning    such    practice.

After reporting discrimination in 2016, despite a good job performance as

stated by Jones' supervisor and the last two evaluations, Jones was terminated

without his supervisor's input and without a basis in fact. Defendants retaliated

against Jones by terminating his employment because of his reporting of

unlawful activity. Defendants' actions constituted adverse actions under 29 U.S.C. § 215(a)(3) and 42 U.S.C. § 2000e-3(a), because terminating Plaintiff's employment would have dissuaded a reasonable person in Plaintiff's circumstances from complaining about harassment.

The ultimate issue in a Title VII retaliation case is "whether the defendant [employer] discriminated against the plaintiff [employee] because the plaintiff engaged in conduct protected by Title VII." *Long v. Eastfield College,* 88 F.3d 300, 305 n. 4 (5th Cir.1996) (emphasis in original). Jones must first establish a prima facie case of retaliation by showing that he engaged in activity protected under the statute, the employer imposed an adverse employment action, and there was a causal connection between the two actions. *Scrivner v. Socorro Independent Sch. Dist.*, 169 F.3d 969 (5th Cir.1999). As Jones established a prima facie case, the burden shifts to Defendants to articulate legitimate nonretaliatory reason for the adverse action. *Wrighten v. Metropolitan Hosps., Inc.*, 726 F.2d 1346 (9th Cir.1984). If it does, which Jones' disputes, he must show the proffered explanation was merely a pretext or that a discriminatory reason more likely motivated its actions. *Id.*   He has done so.

**Conclusion**

Jones presented sufficient evidence for a jury to conclude he was discriminated against due to race and retaliated against for reporting it.

DATED this 26th day of October, 2020.

By:   /s/ Kimberly A. Eckert
      Kimberly A. Eckert
      Attorney for Plaintiff

## **CERTIFICATE OF FILING SERVICE**

I hereby certify that on October 26, 2020, I efiled this document via ECF and served the attached document electronically to:

Rachel M.B. Remes
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592

By*: /s/ Kimberly A. Eckert*