**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lavell H. Jones, | No. CV-19-08210-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court is the State of Arizona, the Arizona Board of Regents, and Northern Arizona University (collectively, the "Defendants") Motion for Summary Judgment (Doc. 45). Plaintiff Lavell H. Jones ("Mr. Jones" or "Plaintiff") filed a Response (Doc. 48), and Defendants filed a Reply (Doc. 49).

**I. Background**

Mr. Jones, a black man, is a former employee of Northern Arizona University. (Doc. 1 at ¶¶ 4, 11). He began work in August 2012 as a shuttle driver. (Doc. 45-1 at 4). After a March 2018 incident with a shuttle passenger, Defendants terminated his employment. (Docs. 1 at ¶¶ 12, 14; 45 at 2). As described by Defendants, the incident started when Plaintiff asked a passenger to move his legs. (Doc. 45-1 at 24). The passenger attempted to comply, but his height made it difficult to "fully move his feet completely out of the way." (*Id.*) At the next stop Plaintiff exited his seat and again instructed the passenger to comply. When Plaintiff resumed driving, he continued to comment on the "feet thing." (*Id.*) Verbal

escalation between Plaintiff and the passenger occurred. (*Id.*) Ultimately, Plaintiff called the police and pulled the bus over for removal of the passenger. (*Id.*) Defendants informed Plaintiff that his behavior during the incident was unprofessional, inappropriate, and served to escalate the situation. (Docs. 1 at ¶ 13; 19 at ¶ 13). Mr. Jones argues that the passenger was "unruly and argumentative" and that he had followed the appropriate policies and procedures in handling the incident, despite later censure. (Doc. 48 at 4).

On April 6, 2018, following the incident, Defendants placed Plaintiff on administrative leave. (Docs. 1 at ¶ 14; 19 at ¶ 14). Defendants subsequently terminated Plaintiff on May 1, 2018. (Docs. 1 at ¶ 14; 19 at ¶ 14). A memorandum to Plaintiff by Defendants lists the March incident and several other incidents of poor employee performance dating back to 2013 as the basis for his termination. (Doc. 45-1 at 22).

Plaintiff then filed a complaint with the EEOC on December 20, 2018. (Doc. 1 at ¶ 15). He brings two Claims against Defendants under Title VII for racial discrimination and retaliation. (*Id.* at ¶¶ 6–7). Plaintiff claims he was denied promotions and excessively disciplined because of his race. (Doc. 48 at 4). The Court notes that this is not the first time Plaintiff has alleged that Defendants discriminated against him because of his race. In 2016, Plaintiff filed a complaint with the EEOC against Defendants alleging that his former supervisor discriminated against him because of his race. (Doc. 45-1 at 70). The EEOC's investigation was inconclusive, and the record does not show Plaintiff filed suit after the EEOC's finding. (*Id.* at 72).

Defendants now move for summary judgment on both Claims.

**II. Legal Standard**

Summary judgment is generally appropriate when the evidence, viewed "in the light most favorable to the non-moving party," shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987); Fed. R. Civ. P. 56(a). A fact is material if it affects the outcome of the case under prevailing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, "legal conclusions couched as factual allegations" as well as "conclusory allegations of law and unwarranted inferences" need not be accepted as true. *Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971, 978 (D. Ariz. 2017) (quoting *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998)). The Court may consider "hearsay evidence submitted in an inadmissible form" on a summary judgment motion "so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.,* 828 F.3d 1098, 1110 (9th Cir. 2016). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. Discussion**

**A. Racial Discrimination**

Defendants argue Plaintiff fails to establish a *prima facie* case of discrimination. (Doc. 45 at 4). Title VII of the Civil Rights act of 1964 prohibits an employer from discriminating based on race. 42 U.S.C. § 2000e-2(a). An employer discriminates against an employee when it treats him or her "less favorably than others similarly situated on account of race." *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988). To establish a *prima facie* case of racial discrimination under Title VII, a plaintiff "'must offer evidence that gives rise to an inference of unlawful discrimination,' either through the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973) or with direct or circumstantial evidence of discriminatory intent." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). When a plaintiff responds to a summary judgment motion, he makes a choice regarding how to establish his case, either by using the *McDonnell Douglas* framework or by producing "direct or circumstantial evidence to demonstrate that a discriminatory reason more likely than not motivated" defendant. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

Here, Plaintiff responded using the *McDonnell Douglas* framework. (Doc. 48 at 10). Establishing a *prima facie* case under *McDonnell Douglas* requires a plaintiff to show: (1) he is a member of a class protected by Title VII; (2) he performed his job satisfactorily; (3) he endured adverse employment action; and (4) the plaintiff's employer gave more favorable treatment to similarly situated employees outside plaintiff's protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802). Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendants to show there were legitimate, nondiscriminatory reasons for the adverse employment action. *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 804). The plaintiff is then responsible for establishing that the employer's stated discriminatory reason is a pretext for discrimination. *Id.*

### 1. Protected class

The parties do not dispute Mr. Jones, a black male, is a member of a protected class. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) (finding that the plaintiff met this prong by proving that he was black and therefore a member of a protected class).

### 2. Job performance

The Parties dispute whether Plaintiff performed his job well. "If an employment practice which operates to exclude [minorities] cannot be shown to be related to job performance, the practice is prohibited." *Ricci v. DeStefano*, 557 U.S. 557, 578 (2009) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)). When an employee is notified that further poor job performance could lead to termination, this indicates the employee's job performance is not satisfactory. *Medina v. FCH Enters.*, No. 12-00364, 2013 WL 3157526, at *26 (D. Haw. June 19, 2013); *see also Buhl v. Abbott Labs.*, 817 F. App'x 408, 411 (9th Cir. 2020) (finding that past misconduct leading to termination warnings indicated performance dissatisfaction).

Defendants argue they terminated Plaintiff "for repeated incidents of unprofessional communications and interactions in the position of Driver, Bus/Tram at Shuttle Services."

(Doc. 45-1 at 22). Defendants characterize Plaintiff's March 2018 incident as the "final straw" following many documented "Needs Improvement" employee performance reviews. (Doc. 49 at 11). In addition, Defendants argue that throughout Plaintiff's employ, they received complaints about Plaintiff's behavior, which they attempted to address. (Doc. 45 at 4).

To evidence this, Defendants present several written warnings related to Plaintiff's poor job performance dating back to 2013. (*See e.g.*, Doc. 45-1 at 22–25). In December 2013, Plaintiff received a letter of warning for failure to do post-trip inspections, "drive all assigned routes," and be respectful to other drivers. (*Id.* at 27). The letter also stated that if Plaintiff's performance did not improve, termination may be necessary. (*Id.*) In September 2014 Plaintiff received a letter of warning for hitting a student's backpack, honking at the student, and leaving a bus stop without allowing students to board. (*Id.* at 29–30). Defendants had a performance discussion with Plaintiff in 2014 regarding unprofessional communication and Plaintiff chest-bumping a coworker. (*Id.* at 22, 39). In 2015 Defendants had a performance discussion with Plaintiff regarding inappropriate comments made to a student coworker that made her uncomfortable. (*Id.* at 22). Plaintiff received an overall "Needs Improvement" performance rating in 2015. (*Id.* at 56). In January 2016, Plaintiff received a letter of warning for unprofessional communication with staff workers. (*Id.* at 32). Defendants instructed Plaintiff to speak professionally following this letter of warning. (*Id.* at 23). Plaintiff received an overall "Needs Improvement" performance rating in 2016. (*Id.* at 61).

Plaintiff does not dispute that these events occurred. However, Plaintiff argues that his supervisor had said Plaintiff had done his job well and that his "very good" job performance rating in 2017, a year prior to his 2018 termination incident establishes that he performed his job satisfactorily. (Doc. 48-1 at 7–17, 20–28). Plaintiff additionally asserts that his misconduct prior to 2016 should not be relevant because "[i]t was dealt with in the 2016 EEOC charge and was over with." (Doc. 48 at 12). Plaintiff also attempts to refute Defendants' allegations concerning Plaintiff's unprofessional demeanor because he

was "repeatedly asked to transport alumni and . . . university management on events." (*Id.* at 6).

The Court finds that Plaintiff's arguments do not establish "that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance." *Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1074–75 (9th Cir. 1986) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979)). The fact that Plaintiff had received some good performance reviews immediately before his termination does not erase the litany of other reviews that show Plaintiff was not performing a satisfactory job as a whole. Despite Plaintiff's arguments that his past misconduct should not be considered, the Court cannot find, nor has it been presented with, legal authority stating that past performance is subject to a time-bar when evaluating an employee for termination. Finally, the fact that he was asked to transport passengers to university events is not surprising given his position, and it does not erase other incidents of misconduct. Overall, Plaintiff's arguments do not rule out the possibility that he was fired for inadequate performance. *See Sengupta*, 804 F.2d at 1074–75 (finding no racial discrimination for termination of an employee with lower performance evaluations during company economic difficulties); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) (finding where an employee failed to perform a function of her job, it was not clear that she performed her job well enough to rule out the possibility of termination for inadequate job performance); *Strong v. Progressive Roofing Servs.*, No. 05–1023–PHX–EHC, 2007 WL 2410354, at *7 (D. Ariz. Aug. 19, 2007) (citing *Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir. 1986) (finding where an employee violated company policies on numerous occasions and failed to offer evidence to the contrary, termination on the basis of inadequate job performance was not ruled out).

Because the record, when viewed as whole, reflects poor job performance, Plaintiff has not established the second prong of his *prima facie* claim.[1] As Plaintiff must establish

---

[1] The Court notes that, even assuming Plaintiff could make a *prima facie* showing, these repeated infractions and admonitions evidence legitimate, non-discriminatory reasons to terminate Plaintiff. Although Plaintiff argues pretext may be inferred by the fact that some of the infractions are so remote in time, this argument, again, cites to no legal support.

- 6 -

1  all elements of the *McDonnell Douglas* framework for a *prima facie* case, the Court may
2  end the inquiry here. The undisputed facts show Defendants are entitled to summary
3  judgment on Plaintiff's racial discrimination Claim in their favor.

### B. Retaliation

Defendants additionally argue that summary judgment is proper because Plaintiff has failed to establish a *prima facie* retaliation claim. Title VII of the Civil Rights Act of 1964 prevents employers from retaliating against employees for opposing unlawful discrimination. 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* framework also applies to Title VII retaliation claims. *McGinest*, 360 F.3d at 1124. To establish a *prima facie* case of retaliation, a plaintiff must show (1) that they "engaged in protected activity"; (2) that thereafter "adverse employment action" was taken against them; and (3) "a causal link exists between the two" events. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). An employee engages in protected conduct when he makes a charge, testifies, assists, or participates in an investigation, proceeding or hearing regarding unlawful employment practices. 42 U.S.C. § 2000e-3(a). An adverse employment act is an action that is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1237 (9th Cir. 2000). Termination qualifies as an adverse employment action. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). To establish a causal link, a plaintiff must show that the employer's retaliation "was the but-for cause of the challenged employment action." *University of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362-63 (2013). Timing can establish a causal link when an employer's actions are "close on the heels" of a plaintiff's complaint. *Ray*, 217 F.3d at 1244.

Plaintiff alleges Defendants terminated his employment in retaliation for "engag[ing] in activity protected by Title VII." (Doc. 1 at ¶¶ 39–40). The activity he refers to is his March 14, 2016, EEOC charge filing against his former supervisor. (Doc. 45-1 at 70). It is undisputed that he filed an EEOC claim in March of 2016 for alleged

---

(Doc. 48 at 15–16).

discrimination, which is a protected activity, and it is undisputed that Defendants terminated Plaintiff two years later, which qualifies as an adverse employment action. *See Brooks*, 229 F.3d at 928; *see also* 42 U.S.C. § 2000e-3(a). However, Plaintiff has not brought forth any evidence showing a causal link between his 2016 EEOC filing and his 2018 termination.

Plaintiff merely concludes there is a causal link but does not substantiate this assertion. (Doc. 1 at ¶ 16; Doc. 19 at ¶ 16). The two events are separated by two years. Plaintiff's termination was not "right on the heels" of his 2016 EEOC filing and, therefore, the timing does not establish the connection. *See Ray*, 217 F.3d at 1244. Additionally, because Plaintiff filed another EEOC complaint on December 20, 2018 *after* his termination in March 2018, the adverse employment action thus was not a result of this more recent filing. Consequently, without showing a causal connection Plaintiff fails to satisfy his burden to establish a *prima facie* retaliation claim.

**IV.   Conclusion**

Mr. Jones has failed to establish a *prima facie* claim for racial discrimination and retaliation. Therefore, the Court must grant Summary Judgment in Defendants' favor on both Claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 45) is **granted**. The Clerk of Court is directed to enter judgment in Defendants' favor and terminate this matter.

Dated this 26th day of July, 2021.

Honorable Diane J. Humetewa
United States District Judge